# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1229V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
```
                                      *
CHRISTOPHER CARY,                     *      Chief Special Master Corcoran
                                      *
              Petitioner,             *      Filed:  March 31, 2026
                                      *
v.                                    *
                                      *
SECRETARY OF HEALTH                   *
AND HUMAN SERVICES,                   *
                                      *
              Respondent.             *
                                      *
```
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Nancy R. Meyers*, Turning Point Litigation, Greensboro, NC, for Petitioner.

*Parisa Tabassian*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION GRANTING IN PART MOTION FOR INTERIM AWARD OF ATTORNEY'S FEES AND COSTS[1]

On September 18, 2020, Christopher Cary filed a petition for compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleges that he developed Guillain-Barré syndrome ("GBS") as a result of receiving an influenza ("flu") vaccine on September 23, 2017. Petition (ECF No. 1) at 1. A two-day Entitlement Hearing was held in Washington, D.C., in April 2025, and the matter is still pending resolution.

Nearly two years ago (and prior to the hearing), Petitioner filed a motion for an interim award of attorney's fees and costs. Motion, dated July 2, 2024 (ECF No. 59). I deferred ruling on Petitioner's motion until after hearing. Order, dated Dec. 3, 2024 (ECF No. 62). Petitioner has

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

1

since supplemented the motion to include additional fees and costs incurred through trial, and thereafter. *See* Second Motion for Interim Attorneys' Fees and Costs, dated May 21, 2025 (ECF No. 89) ("Second Interim Mot."); Third Motion for Interim Attorneys' Fees and Costs, dated Oct. 14, 2025 (ECF No. 100) ("Third Interim Mot."). Petitioner requests a total of $504,864.17, reflecting: (a) $420,301.18 ($295,169.50 in attorney's fees and $125,131.68 in costs) for the work of attorney, Nancy Meyers at Turning Point Litigation; and (b) $84,562.99 ($83,281.20 in attorney's fees and $1,281.79 in costs) for the services incurred by Ms. Meyers' co-counsel, Lisa A. Roquemore. Second Interim Mot. at 1–2; Third Interim Mot. at 1–2.

Respondent filed briefs in reaction to all three of Petitioner's interim fee requests. Response to First Motion for Interim Attorney's Fees and Costs, dated July 3, 2024 (ECF No. 60); Response to Second Motion for Interim Attorney's Fees and Costs, dated May 29, 2025 (ECF No. 90); Response to Third Motion for Interim Attorney's Fees and Costs, dated Oct. 17, 2025 (ECF No. 101). Respondent raised multiple concerns (some of which are addressed below), but ultimately stated that the matter likely had reasonable basis, and deferred to my discretion and judgement in the amount of fees to be awarded. *See* ECF No. 60 at 3; ECF No. 95 at 3; ECF No. 101 at 3. Petitioner filed a reply to each response in support of her requested fees and costs. Reply, dated July 9, 2024 (ECF No. 61); Reply, dated June 17,2025 (ECF No. 95); Reply, dated Oct. 17, 2025) (ECF No. 102).

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's motion, awarding fees and costs in the total amount of **$477,273.37**.

**ANALYSIS**

### I.        Requests for Interim Attorney's Fees and Costs

I have in prior decisions discussed at length the standards applicable to determining whether to award fees on an interim basis. *Auch v. Sec'y of Health & Hum. Servs.*, No. 12-673V, 2016 WL 3944701, at *6–9 (Fed. Cl. Spec. Mstr. May 20, 2016); *Al-Uffi v. Sec'y of Health & Hum. Servs.,* No. 13-956V, 2015 WL 6181669, at *5–9 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). It is well-established that a decision on entitlement is not required before fees or costs incurred to that point in time, but prior to the case's full resolution, may be awarded. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *8 (Fed. Cl. Spec. Mstr. Aug. 27, 2013); *see also Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). But because no entitlement determination has been (usually) made at the time an interim award is sought, the party requesting such an award must meet the reasonable basis standard applicable to literally "unsuccessful" cases. *Avera*, 515 F.3d at 1352.

2

While there is no presumption of entitlement to interim fees and costs awards (rendered in advance of a case's final determination), special masters may in their discretion make such awards, and often do so. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Requests for interim costs are subject to the same standards. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Fester*, 2013 WL 5367670, at *16. Criteria that I have found to be important in determining whether an interim award should be permitted include: 1) if the amount of fees requested exceeds $30,00.00; 2) where expert costs are requested, if the aggregate amount is more than $15,00.00; or 3) if the case has been pending for more than 18 months. *See Knorr v. Sec'y of Health & Hum. Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017). In addition, the withdrawal or substitution of counsel is often deemed reasonable grounds in and of itself for an interim award (except where the special master has foundational concerns about the claim's reasonable basis). *See e.g., Woods v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 148, 154 (2012).

For fee requests generally, counsel must submit contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, [is] reasonable for the work done." *Id*. Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011).

The Petitioner "bears the burden of establishing the hours expended, the rates charged, and the expenses incurred." *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1991). The Petitioner "should present adequate proof [of the attorney's fees and costs sought] at the time of the submission." *Id.* at 484 n.1. Petitioner's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.

I find an interim award is appropriate in this case. Claims alleging the flu vaccine caused some form of peripheral neuropathy are very common in the Program, and routinely result in damages awards (depending, of course, on the facts of a given case). Further, there is evidence that the Petitioner experienced neurological symptoms after vaccination. Respondent also appears to

3

agree the claim possesses reasonable basis. *See* ECF No. 60 at 3; ECF No. 95 at 3; ECF No. 101 at 3. And it is appropriate to award fees to litigants after trial, given the costs involved. Accordingly, I will permit an award in this matter.

## II.    Calculation of Fees

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method - "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely*, 461 U.S. at 429–37.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

### A.    *Rates and Fees for Turning Point Litigation Attorneys*

Petitioner requests the following rates for attorneys associated with Ms. Meyers, based on the years work was performed:

|  | **2020** | **2021** | **2022** | **2023** | **2024** | **2025** |
|---|---|---|---|---|---|---|
| **Nancy Meyers (Attorney)** | $400.00 | $430.00 | $460.00 | $490.00 | $530.00 | $530.00 |
| **L. Cooper Harrell (Attorney)** | N/A | N/A | $430.00 | $460.00 | $490.00 | $490.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Tyler Nullmeyer (Attorney)** | N/A | N/A | N/A | N/A | $315.00 | $350.00 |
| **Paralegals** | $150.00 | $155.00 | $160.00 | $165.00 | $180.00 | $180.00 |

ECF No. 100-1 at 1.

The attorneys at Turning Point Litigation practice in Greensboro, NC—a jurisdiction that has been deemed "in forum." Accordingly, they should be paid form rates as established in *McCulloch. See Stone v. Sec'y of Health & Hum. Servs.*, No. 18-634V, 2023 WL 8895692 (Fed. Cl. Spec. Mstr. Nov. 29, 2023). The rates requested for work performed through 2025 for these professionals and their paralegals are also consistent with what has previously been awarded for their work, in accordance with the Office of Special Masters' fee schedule. [3] *Rushing v. Sec'y of Health & Hum. Servs.*, No. 19-397V, 2024 WL 4449511, at *2 (Fed. Cl. Spec. Mistri. Sept. 10, 2024). I thus find no cause to reduce them in this instance (and grant all time devoted to the matter through the end of 2025).

B.    *Rates For and Work Performed by Ms. Roquemore*

Ms. Roquemore is the other attorney involved in the trial of this matter, engaged to assist on this matter by Ms. Meyers and Turning Point Litigation. The Petitioner requests the following rates for the work Ms. Roquemore performed:

| | 2024 | 2025 |
|---|---|---|
| **Lisa A. Roquemore (Attorney)** | $ 475.00 | $ 475.00 |
| **Paralegal** | $139.00 | $139.00 |

ECF No. 89-1 at 45–67.

Ms. Roquemore practices in Southern California—a jurisdiction that has been deemed "in forum," and thus entitling her to rates commensurate with what was established in *McCulloch. See Davis v. Sec'y of Health & Hum. Servs.*, No. 14-978V, 2017 WL 656304, at *2 (Fed. Cl. Spec. MStr. Jan. 23, 2017). The requested rates are also consistent with what has previously been awarded for Ms. Roquemore's time, in accordance with the Office of Special Master's fee schedule. [4] *Basdakis v. Sec'y of Health & Hum. Servs.*, No. 20-1158V, 2025 WL 455394, at *2

---

[3] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules (last visited Mar. 18, 2026).

[4] *See supra* note 3.

(Fed. Cl. Jan. 16, 2025); *Lancaster v. Sec'y of Health & Hum. Servs.*, No. 19-1546V, 2023 WL 5798010 (Fed. Cl. Spec. Mstr. July 17, 2023). These rates are reasonable and will be adopted.

A substantial amount of time was devoted to this case by Ms. Roquemore. But a cursory review of the billing records submitted reveal several discrepancies. First, some tasks performed by attorneys were more properly billed using a paralegal rate.[5] Attorneys in the Vaccine Program are permitted to perform paralegal-level work, such work must be billed at a rate comparable to what a paralegal would be paid for performing the same task. *Riggins v. Sec'y of Health & Hum. Servs.*, No. 99-382V, 2009 WL 3319818, at *21 (Fed. Cl. Spec. Mstr. June 15, 2009) ("Tasks that can be completed by a paralegal or a legal assistant should not be billed at an attorney's rate."). "[T]he rate at which such work is compensated turns not on who ultimately performed the task but instead turns on the nature of the task performed." *Doe/11 v. Sec'y of Health & Hum. Servs.*, No. XX-XXXXV, 2010 WL 529425, at *9 (Fed. Cl. Spec. Mstr. Jan. 29, 2010).

Second, Ms. Roquemore and her paralegal billed for certain tasks that would be more appropriately classified as "administrative."[6] It is well-established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services...should be considered as normal overhead office costs included within the attorneys' fees rates"). Attorneys have been denied fees for billing entries that include language such as "...receive disk, copy to computer..." or "[c]heck file, docket, order and calendar" or "finalize invoice" or "reviewing invoices, setting up meetings, and making travel arrangements" on the basis that these entries represent administrative tasks. *Moxley v. Sec'y of Health & Hum. Servs.*, No. 06-213V, 2017 WL 5080289, at *3 (Fed. Cl. Oct. 12, 2017); *Mostovoy v. Sec'y of Health & Hum. Servs.*, No. 02-10, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

Further, the overall amount of time devoted to this matter by Ms. Roquemore was facially excessive. Ms. Roquemore and her staff billed 211.8 hours towards this matter—63.4 hours in 2024 and 148.4 hours in 2025. *See* ECF No. 89-1 at 45–67; ECF No. 100-1 at 13–14. This is substantial considering the only motions filed when Ms. Roquemore was brought on in that year was Petitioner's Motion for Interim Attorney's Fees and Costs, and Ms. Roquemore does not appear to have assisted with the drafting or filing of Petitioner's pre-hearing brief. *See* ECF No. 59; *See* ECF No. 89-1 at 45–55. In addition, Ms. Roquemore's paralegal billed over nine hours

---

[5] Entries considered paralegal in nature includes, but is not limited to, drafting and filing basic documents such as an exhibit list, PAR Questionnaire, notice of filing exhibit list, statements of completion, notice of intent, cover sheet, joint notices not to seek review, filing medical records, drafting subpoenas for records, and following up on production of records from providers. *See, e.g.*, billing entries dated: 06/18/2024, 11/20/2024, 02/18/2025, 02/24/2025, 03/06/2025, 03/07/2025.

[6] *See, e.g.,* billing entries dated 07/15/2024, 11/20/2024, 11/26/2024, 11/27/2024, 02/21/2025, 02/27/2025, 02/28/2025, 03/03/2025, 03/14/2025, 03/20/2025, 03/24/2025, 03/26/2025, 04/14/2025, 04/15/2025.

and charged $1,167.60 for drafting notices of filing. ECF No. 98-1 at 53. And Ms. Roquemore billed multiple hours for interoffice discussions with her paralegal and Ms. Meyer's paralegal for junior tasks. *See id.* at 45–67.

Although in some circumstances I would weigh apparent heavy billing of attorney time against the fact that the matter took close to three days to try, I am cognizant of the fact that Ms. Roquemore has a history of excessive billing for certain tasks that warrant reduction. *See, e.g., D.S. v. Sec'y of Health & Hum. Servs.*, No. 10-77V, 2017 WL 6397826, at 3–5 (Fed. Cl. Spec. Mstr. Nov. 20, 2017) (reducing fees by 10% due to excessive client and interoffice communications, duplicative billing, and time spent on administrative tasks); *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685V, 2021 WL 6211169, at *12 (Fed Cl. Spec. Mstr. Dec. 8, 2021 (noting excessive time spent on certain tasks and time spent on junior-level work billed at full hourly rate); *Iniguez v. Sec'y of Health & Hum. Servs.*, No. 18-1537V, 2023 WL 3729843, at *4–6 (Fed. Cl. Spec. Mstr. May 30, 2023) (finding that Ms. Roquemore's nearly six-figure fee for a case that settled for $10,000.00 reflected a lack of billing judgment and reducing the fee by 15%); *D.G. v. Sec'y of Health & Hum. Servs.*, No. 11-577V, 2020 WL 3265015, at *4 (Fed. Cl. Spec. Mstr. May 22, 2020 (explaining that counsel's performance contributed to " 'perplexing' twists and turns" in the case and that "the case need not have generated the high fees and costs that it has over the lengthy period it was litigated."); *J. T. v. Sec'y of Health & Hum. Servs.*, No. 12-618V, 2018 WL 4623163, at *6 (Fed. Cl. Apr. 20, 2018) (finding that Ms. Roquemore billed for an excessive amount of time to complete several tasks); *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685V, 2016 WL 909186, at *9 (Fed. Cl. Spec. Mstr. Feb. 17, 2016) (reducing Ms. Roquemore's billable hours due to excessive billing practices); *Brown v. Sec'y of Health & Hum. Servs.*, No 09-426V, 2013 WL 1790212, at *3 (Fed. Cl. Spec. Mstr. Apr. 8, 2013) (finding that some of the hours billed by Ms. Roquemore were excessive and unreasonable). She clearly has repeatedly been put on notice in the Vaccine Program that she needs to exercise greater billing judgment—and yet for some reason that message has yet to sink in.

Accordingly, I will exercise my discretion to make judicious, across-the-board cuts to time in this matter. I find that a 20% reduction for Ms. Roquemore's requested attorneys' fees is reasonable and appropriate. Application of the foregoing reduces the amount of fees to be awarded to Ms. Roquemore by **$16,912.60**.[7]

### III.    Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002): *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while

---

[7] Calculated by: (20% ÷ 100) x $84,562.99 = $16,912.60.

working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $125,131.68 in outstanding costs for Ms. Meyers, and $1,281.79 in outstanding costs for Ms. Roquemore. ECF No. 89-1 at 27–28, 62–67; ECF No. 100-1 at 9. These costs include, but are not limited to, the filing fee, medical record retrieval costs, mailing costs, travel expenses, litigation costs, and costs associated with five experts: Dr. Lawrence Steinman, Dr. Carlo Tornatore, Dr. Lucian Bednarz, Dr. Patrick Connors, and Dr. Uzzal Roy. I discuss all costs reductions below.

A.    *Petitioner's General Litigation and Trial Costs*

Documentation was provided for the Court's filing fee, medical records requests, copying expenses, and mailing expenses. I find these costs reasonable and shall award them in full.

Petitioner's counsel also requested reimbursement for certain overhead expenses, such as Westlaw research, photocopying, costs for medical journals, and teleconferencing software. Respondent objected to these costs, claiming they were overhead expenses associated with the regular business practice of law. ECF No. 90 at 5. That objection has some merit. *Rodriguez v. Sec'y of Health & Hum. Servs.*, No. 06-559V, 2009 WL 2568468, at *23 (Fed. Cl. July 27, 2009). However, costs for Westlaw and LexisNexis research has been reimbursed, so long as the relevant attorneys do not collect a surcharge above the actual research costs. *Sevier v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750 (1991) (finding that the special master did not abuse his discretion in denying attorneys from recovering surcharge imposed on Westlaw research by their law firm). Costs for copying has also been found to be reasonable. *See, e.g., Disantis v. Sec'y of Health & Hum. Servs.*, No. 22-1361V, 2025 WL 2305042, at *3 (Fed. Cl. July 8, 2025). Costs associated with purchasing journals, however, is not compensable. *Rodriguez v. Sec'y of Health & Hum. Servs.*, No. 06-559V, 2009 WL 2568468, at *23 (Fed. Cl. July 27, 2009) (finding that a National Law Journal Subscription was an overhead expense and not compensable).

I find that the costs associated with LexisNexis and Westlaw research, costs for copying, and teleconferencing software are appropriate and will reimburse them in full, but I will withhold paying for costs associated with journal subscriptions. This results in a reduction of **$47.00**.

Next, there are some costs associated with travel that I find unreasonable and unnecessary. Several costs incurred during the April 2025 trip to Washington, DC for the entitlement hearing were similarly unreasonable. Three meal charges were incurred at a high-end restaurant (Joe's Seafood) during April 23–25, 2025, of $417.85, $167.00, and $46.35. ECF No. 89-1 at 28, 97,

145. Some of these charges were excessive, and all are not accompanied by an itemized bill. *Id.* at 80. Therefore, it is not discernable who was at each meal or if there was alcohol consumed at either. While the Program will provide reasonable reimbursement for Petitioner's meals while traveling for a hearing, the Vaccine Program does not reimburse for alcoholic beverages nor meals for additional diners not associated with the claim. *Van Vessem v. Sec'y of Health & Hum. Servs*., No. 11-132V, 2018 WL 3989517, at *11 (Fed. Cl. Spec. Mstr. July 3, 2018); *Schmidt v. Sec'y of Health & Hum. Servs.*, No. 11-620V, 2017 U.S. Claims LEXIS 39, at *8 (Fed. Cl. Spec. Mstr. Jan. 4, 2017) (deducting the costs of the beer and accompanying tax from Petitioner's meal). It is also unclear how many people were at the dinner. These costs will not be reimbursed, resulting in a reduction of **$631.20**.

B.    *Petitioner's Expert Costs*

1.    Costs for Dr. Lawrence Steinman

Dr. Steinman is an experienced medical provider and regularly testifies in the Program. Over the course of this claim, Dr. Steinman prepared three expert reports on Petitioner's behalf and testified at the hearing. Report, dated Feb. 24, 2023, filed as Ex. 15 (ECF No. 43-1); Report, dated Oct. 27, 2023, filed as Ex. 47 (ECF No. 48-1); Report, dated Apr. 26, 2024, filed as Ex. 66 (ECF No. 53-1). For these three reports, Dr. Steinman charged Petitioner $52,965.00 at a rate of $550 per hour for 96.3 hours of work, and charged $1,122.27 in travel expenses for a total of $54,087.27. ECF No. 89-1 at 30–31. Dr. Steinman has been awarded this hourly rate in the past and I find no reason to reduce it herein. *See, e.g., Baxter v. Sec'y of Health & Hum. Servs.,* No. 16-922V, 2023 WL 2320342, at *7 (Fed. Cl. Spec. Mstr. Mar. 2, 2023) (granting Dr. Steinman's requested $550 rate for work performed in 2022); *Sparrow v. Sec'y of Health & Hum. Servs.*, No. 18-295V, 2021 WL 5410424, at *4 (Fed. Cl. Spec. Mstr. Oct. 25, 2021) (finding that $550.00 per hour was reasonable for work Dr. Steinman performed in 2021). Similarly, I find the number of hours devoted to the matter reasonable along with Dr. Steinman's travel costs reasonable as well and shall award his costs in full.

2.    Costs for Dr. Carlo Tornatore

Dr. Tornatore is also an experienced medical provider and regularly testifies in the Program. Over the course of this claim, Dr. Tornatore prepared three expert reports on Petitioner's behalf and testified at the hearing. Report, dated Oct. 27, 2023, filed as Ex. 48 (ECF No. 49-1); Report, dated Apr. 26, 2024, filed as Ex. 67 (ECF No. 54-1); Report, dated Sep. 26, 2026, filed as Ex. 93 (ECF No. 99-1). For his work, Dr. Tornatore charged Petitioner $47,250.00, at a rate of $500 per hour for 94.5 hours of work. ECF No. 100-1 at 11. Based on the volume of work, I find these expert costs were reasonably incurred, and I find the sum was reasonable for the work performed.

9

There seems to be, however, a billing discrepancy between Dr. Tornatore's bill and Turning Point Litigation's requested cost. Turning Point Litigation paid Dr. Tornatore a $2,000.00 retainer that Dr. Tornatore did not reference in his bill as satisfied. *See* ECF No. 100-1 at 10–11. Turning Point Litigation has requested to be reimbursed for this expense and I shall reimburse them for this retainer. To prevent reimbursing this cost twice, I shall reduce **$2,000.00** from Dr. Tornatore's requested costs.

### 3.    Costs for Remaining Experts

Petitioner is also requesting $8,000.00 in fees for three treating providers for expert statements and testimony at the hearing. Dr. Uzzal Roy and Dr. Patrick Connors each submitted a statement regarding their first-hand observations of Petitioner's condition, their treatment, and their medical opinions on diagnosis and causation. Statement of Dr. Patrick Conners, dated Feb. 28, 2025, filed as Ex. No. 82 (ECF No. 66-1); Statement of Dr. Uzzal Roy, dated Mar. 4, 2025, filed as Ex. No. 83 (ECF No. 67-1). Dr. Lucian Bednarz also treated Petitioner, and submitted a statement of his care and treatment, and testified at the hearing. Statement, filed as Ex. 86 (ECF No. 80-1).

After review, there is some evidence that raises the question of whether the doctors themselves or counsel authored these statements. More time is needed to investigate this, so I shall defer on ruling on the costs associated with these experts.

**CONCLUSION**

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT IN PART** Petitioners' Motion for Interim Attorney's Fees and Costs.  Petitioner has requested that I issue one check, and Turning Point Litigation shall distribute the fees and costs accordingly, so I award a total of **$477,273.37 (reflecting: (a) $409,669.33 ($295,169.50 in attorney's fees and $114,499.83 in costs) for the work of attorney, Nancy Meyers at Turning Point Litigation; and (b) $67,604.04 ($66,368.60 in attorney's fees and $1,235.44 in costs) for the work of Lisa A. Roquemore) to be paid through an ACH deposit to Petitioner's counsel's (Nancy Meyers) IOLTA account for prompt disbursement**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[8]

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.

10

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master